FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 14, 2018

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DANIEL M., | No. 1:17-cv-03092-MKD |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | ECF Nos. 14, 15 |

BEFORE THE COURT are the parties' Cross-motions for Summary Judgment. ECF Nos. 14, 15. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's Motion (ECF No. 14) and grants Defendant's Motion (ECF No. 15).

ORDER - 1

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner

ORDER - 3

considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c); 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d); 416.920(d).

ORDER - 4

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On January 23, 2014, Plaintiff protectively filed applications for Title II disability insurance benefits and Title XVI supplemental security income benefits, alleging an onset date of September 15, 2012. Tr. 195-217. The applications were denied initially, Tr. 127-35, and on reconsideration, Tr. 138-47. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on October 14, 2015. Tr. 43-74. On November 27, 2015, the ALJ denied Plaintiff's claim. Tr. 23-36.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since September 15, 2012. Tr. 26. At step two, the ALJ found Plaintiff has the following severe impairments:

degenerative disc disease of the spine, obesity, organic mental disorder, major depressive disorder, and antisocial personality disorder.  *Id.*  At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 25.  The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> He can perform simple, routine tasks and follow short, simple instructions. He can do work that needs little or no judgment and can perform simple duties that can be learned on the job in a short period of less than thirty days. He can respond appropriately to supervision, but should not be required to work in close coordination with coworkers where teamwork is required.  He can deal with occasional changes in the work environment.  He can do work that requires no contact with the general public to perform the work tasks.

Tr. 28.

At step four, the ALJ found Plaintiff is unable to perform any past relevant work.  Tr. 34.  At step five, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as assembler, production; packing line worker; and cleaner, housekeeping.  Tr. 35.  The ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from September 15, 2012, through November 27, 2015, the date of the ALJ's decision.  Tr. 35.

ORDER - 7

On March 30, 2017, the Appeals Council denied review of the ALJ's decision, Tr. 1-7, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated Plaintiff's symptom complaints; and

2. Whether the ALJ properly evaluated the medical opinion evidence.

ECF No. 14 at 4.

## DISCUSSION

### A. Plaintiff's Symptom Testimony

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting his symptom claims. ECF No. 14 at 6-12. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina,* 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not

required to show that [his] impairment could reasonably be expected to cause the severity of the symptom []he has alleged; []he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue,* 572 F.3d 586, 591(9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia,* (1) the claimant's reputation for truthfulness; (2) inconsistencies in the

claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas,* 278 F.3d at 958-59.

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms, but that Plaintiff's testimony about the intensity, persistence, and limiting effects of his symptoms were only partially credible. Tr. 29.

### 1. Inconsistent with Medical Evidence

The ALJ found that Plaintiff's subjective symptom complaints were not supported by the medical evidence. Tr. 29. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). Medical evidence is a relevant factor, however, in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

The ALJ found that Plaintiff's symptom complaints were not corroborated by the objective imaging in the record. Tr. 29. MRI imaging of Plaintiff's back showed mostly mild results. *See* Tr. 333, 357 (May 21, 2013 lumbar spine CT showed L4-L5 disk bulge with mild stenosis of the canal, otherwise unremarkable); Tr. 360, 407 (November 25, 2013 MRI showed left paracentral disc bulging with an annular tear at L4-5 mildly narrowing the central canal, left lateral recess, and neural foramen; mild degenerative changes at L2-3, L3-4, L5-S1 without significant stenosis or nerve root impingement); Tr. 378 (MRI showed lateral disc herniation at L3-4 on the left side on February 3, 2014); Tr. 482 (July 22, 2014 imaging shows satisfactory position of hardware and disc materials following surgery); Tr. 583 (March 9, 2015 x-rays look satisfactory); Tr. 586 (April 29, 2015 MRI showed postoperative changes and L2-3 diffuse disc bulging resulting in mild narrowing of the central canal and encroachment of the lateral recesses); Tr. 771 (September 18, 2015 MRI showed progression of mild to moderate degenerative disc disease L2-3 and stable mild degenerative disc disease L5-S1). Plaintiff argues that the objective imaging corroborates Plaintiff's pain allegations. ECF No. 14 at 6-7. However, the Court may not reverse the ALJ's decision based on Plaintiff's disagreement with the ALJ's interpretation of the record. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("[W]hen the evidence is susceptible to more than one rational interpretation" the court will

not reverse the ALJ's decision).  The ALJ rationally concluded that the objective imaging showed mostly mild results, which were inconsistent with the degree of pain Plaintiff alleged.

The ALJ also found that Plaintiff's physical examinations did not substantiate Plaintiff's testimony about his back symptoms.  Tr. 29.  Plaintiff alleged that his back pain caused significant limitations in his ability to walk, sit, and twist.  *See* Tr. 48 (Plaintiff testified that he could not walk for several days approximately six to eight months before his July 2014 surgery); Tr. 52 (Plaintiff testified that he is unable to sustain walking or sitting for long periods of time); Tr. 56 (Plaintiff testified he could sit in a soft chair for four to six hours so long as he didn't twist or move around much, and that walking causes such paint hat he has to lay down for six to eight hours); Tr. 58 (Plaintiff testified that he could not bend down and stand back up).  However, Plaintiff's physical examinations largely showed normal physical functioning.  *See* Tr. 315-16 (April 3, 2013 examination showed back range of motion limited by pain but normal gait, Achilles and patellar deep tendon reflexes normal, no focal motor or focal sensory deficits, and Plaintiff was ambulating without assistance); Tr. 333 (June 30, 2013 examination showed intact sensory and motor in the lower extremities); Tr. 370 (January 6, 2014 range of motion exam showed only slightly reduced range of motion in back extension, back flexion, left lateral flexion, and left hip abduction); Tr. 387 (January 13, 2014

examination showed normal gait, heel walk, toe walk, tandem walk, and active pain free range of motion in hips, shoulders, ankles, elbows, and knees); Tr. 463-64 (July 12, 2014 examination showed normal range of motion in extremities and back, and Plaintiff was ambulatory without assistance); Tr. 474 (July 21, 2014 examination showed Plaintiff was able to toe walk, heel walk, and squat without difficulty; able to bend side to side and rotate side to side to 45 degrees and extend to 30 degrees while seated; hips, knees, and ankles showed excellent pain-free range of motion; and motor strength 5/5 with hip flexion and extension, adduction, and abduction, knee flexion and extension, dorsiflexion, and plantarflexion of the foot and dorsiflexion of the great toe bilaterally); Tr. 579 (November 5, 2014 examination showed normal musculoskeletal overview and Plaintiff was ambulatory); Tr. 582 (March 9, 2015 examinations showed active and passive pain free range of motion, normal gait, and normal lumbar examination); Tr. 585 (May 7, 2015 normal physical examination); Tr. 567 (May 15, 2015 range of motion examination showed normal hip extension and adduction); Tr. 676 (July 4, 2015 examination showed normal range of motion in back following motorcycle accident). The ALJ reasonably concluded that the physical examination evidence did not corroborate Plaintiff's subjective symptom reports.

### 2. *Positive Response to Treatment*

The ALJ found Plaintiff's symptom complaints were inconsistent with the evidence showing Plaintiff's conditions responded well to treatment.  Tr. 30-31.  The effectiveness of medication and treatment is a relevant factor in determining the severity of a claimant's symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2011); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits) (internal citations omitted); *see also Tommasetti*, 533 F.3d at 1040 (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

Here, the ALJ noted that medication and treatment were effective at reducing Plaintiff's physical pain symptoms.  Tr. 30.  The record shows Plaintiff reported an improvement in his pain symptoms with medication and other forms of treatment.  *See* Tr. 332 (Plaintiff reported on June 30, 2013 that medication provided moderate pain relief and his current pain was 3/10); Tr. 380, 502 (Plaintiff reported on February 3, 2014 that his pain was a 3/10 after receiving pain relief injections); Tr. 392 (Plaintiff reported on May 22, 2014 that he experienced a 60-70% improvement for a few days after pain relief injection); Tr. 575 (Plaintiff reported on August 1, 2014 that he is doing well after back surgery and experiences daily improvement in his pain); Tr. 579 (Plaintiff reported on

November 5, 2014 that he continued to experience pain; Dr. Chang recommended a back brace and physical therapy); Tr. 584-85 (Plaintiff reported on May 7, 2015 that overall he is better than before surgery but that he still feels he significantly limited by pain; Dr. Chang recommended continued nonoperative treatment). Plaintiff argues that the record shows he experienced incomplete pain relief. ECF No. 14 at 9 (citing Tr. 485, 575, 578-79, 581, 584, 600). However, the Court may not reverse the ALJ's decision based on Plaintiff's disagreement with the ALJ's interpretation of the record. *See Tommasetti*, 533 F.3d at 1038 ("[W]hen the evidence is susceptible to more than one rational interpretation" the court will not reverse the ALJ's decision). Here, the ALJ reasonably concluded that the evidence showed Plaintiff responded favorably to treatment, which undermined Plaintiff's allegations of completely disabling pain.

The ALJ also observed that medication and treatment were effective in controlling Plaintiff's mental health symptoms. Tr. 30-31. Plaintiff took mental health medication and attended therapy throughout the relevant period. *See* Tr. 354 (Plaintiff was current on Seroquel and Bupropion on May 24, 2013); Tr. 435 (Plaintiff was taking Seroquel and Bupropion and receiving individual therapy on January 22, 2014) Tr. 416 (Plaintiff was taking Seroquel and Bupropion on January 24, 2014); Tr. 379 (Plaintiff was taking Seroquel and Bupropion on February 3, 2014); Tr. 401-403 (Plaintiff's March 2014 medical records showed

ORDER - 15

Plaintiff was taking Bupropion, Clonazepam, and Seroquel, and was receiving individual therapy); Tr. 405 (same).

During this time period, Plaintiff was observed as having largely normal psychiatric conditions while receiving medical treatment. *See* Tr. 314 (Plaintiff presented to the emergency department on April 3, 2013; normal affect observed); Tr. 326, 329 (testing on June 18, 2013 showed Plaintiff had moderate depression, no anxiety, and mental status exam was entirely within normal limits; Plaintiff was observed with appropriate hygiene, cooperative manner, normal thought process and content, normal insight and judgment, and average to above average range of intelligence); Tr. 332 (Plaintiff "alert and oriented x3" on June 30, 2013). Although Plaintiff's mental status examinations between January and March 2014 showed constricted affect and anxious and depressed mood, they also consistently showed fair reasoning, fair judgment, fair insight, fair impulse control, appropriate appearance and speech, full orientation, unremarkable behavior, intact memory, maintained attention, average intellect, clear consciousness, cooperative and hopeful attitude, realistic perception of self, logical thought process, unremarkable thought content, and no suicidal ideation. Tr. 427-28, 432-33, 436-37. Plaintiff's mental status examinations between April 2014 and May 2015 consistently showed Plaintiff was oriented to person, place, time, and situation, and he displayed appropriate mood, normal affect, normal speech, normal memory, normal insight,

and normal judgment.  Tr. 390, 392, 394, 463, 473, 495, 576, 579, 585.  On

January 23, 2015, Dr. Jackson noted Plaintiff's bipolar symptoms improved with

Seroquel.  Tr. 620.  On April 24, 2015, Dr. Jackson noted Plaintiff's mental health

conditions were "pretty much stable on current meds" and his "significant mental

health/behavioral issues [were] under reasonable control on current meds."  Tr.

569-70.  During an examination just weeks before the administrative hearing,

Plaintiff was again observed to have appropriate mood and affect, full orientation,

logical thought process, sufficient fund of knowledge, clear speech, average

intelligence, and no agitation, no compulsive behavior, no fear, no flight of ideas,

no forgetfulness, no hallucinations, no mood swings, no obsessive thoughts, no

pressured speech, and no suicidal ideation.  Tr. 731.  The ALJ reasonably

concluded that this record indicated Plaintiff's symptoms responded well to

treatment, which undermined his symptom testimony.  Tr. 31.  Plaintiff's positive

response to treatment in both his physical and mental symptoms constitutes a clear

and convincing reason to discredit Plaintiff's subjective symptom testimony.

### 3.  Daily Activities

The ALJ found Plaintiff's daily activities were inconsistent with the level of

impairment Plaintiff alleged.  Tr. 31.  A claimant's reported daily activities can

form the basis for an adverse credibility determination if they consist of activities

that contradict the claimant's "other testimony" or if those activities are

transferable to a work setting. *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007);

*see also Fair*, 885 F.2d at 603 (daily activities may be grounds for an adverse

credibility finding "if a claimant is able to spend a substantial part of his day

engaged in pursuits involving the performance of physical functions that are

transferable to a work setting."). "While a claimant need not vegetate in a dark

room in order to be eligible for benefits, the ALJ may discredit a claimant's

testimony when the claimant reports participation in everyday activities indicating

capacities that are transferable to a work setting" or when activities "contradict

claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13 (internal

quotation marks and citations omitted).

Here, the ALJ noted that Plaintiff's ability to ride his motorcycle was

inconsistent with the level of back pain he alleged. Tr. 31. Plaintiff testified that

he was able to ride his motorcycle for 20 to 30 minutes at a time. Tr. 66.

However, Plaintiff also testified that his limitations in sitting included needing to

sit on a soft surface with back support without twisting, that he could not twist his

back, and that sitting with his arms outstretched in front of him aggravated his back

pain. Tr. 56-58. The ALJ reasonably concluded that Plaintiff's ability to ride a

motorcycle, even if only for short periods of time, was inconsistent with the

specific limitations Plaintiff alleged.

Additionally, the ALJ observed that Plaintiff performed several work activities during the relevant period that were inconsistent with the level of impairment he alleged. Tr. 31. Plaintiff attributes his back pain to an injury that occurred in September 2012. Tr. 46. However, Plaintiff reported being able to cut down trees and lift logs in approximately January 2013. Tr. 314-15. Plaintiff was able to drive a truck for 40 hours per week for one month following his September 2012 injury. Tr. 234. These work activities are inconsistent with Plaintiff's testimony that he is unable to consistently sit for more than four to six hours at a time, is unable to lift and twist, and unable to sit with his arms outstretched. Tr. 57-58. The ALJ reasonably concluded that Plaintiff's ability to perform these activities after the date of his allegedly disabling accident was inconsistent with the level of impairment Plaintiff alleged. This was a clear and convincing reason to discredit Plaintiff's subjective symptom testimony.

### 4. Inconsistent Statements

The ALJ found Plaintiff's subjective symptom testimony was less credible because the record contained inconsistent statements by Plaintiff. Tr. 31-32. In evaluating the credibility of symptom testimony, the ALJ may utilize ordinary techniques of credibility evaluation, including prior inconsistent statements. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Moreover, it is well-settled

in the Ninth Circuit that conflicting or inconsistent statements concerning drug use can contribute to an adverse credibility finding. *Thomas*, 278 F.3d at 959.

Here, the ALJ found that the record indicated Plaintiff inconsistently reported his narcotics use. Tr. 31-32. A chart note from Plaintiff's April 3, 2013 visit to the emergency department indicates "Patient currently uses drugs, abuses opiate, Drug history notes: Pt states last used oxycontin yesterday. 'I use whatever I can find when I need it.'" Tr. 315. After this visit to the emergency department, Plaintiff's primary care provider increased his pain medication from Vicodin to four daily doses of Percocet. Tr. 351. During a June 18, 2013 psychological examination, Plaintiff did not report opiate abuse, although he did report Vicodin as a current medication. Tr. 325-26. During an April 15, 2014 appointment, Plaintiff reported that his last opioid use was that same day, and he had a prescription for Oxycodone at the time. Tr. 494-95. A chart note from Plaintiff's July 12, 2014 visit to the emergency department for over sedation states "Patient currently uses drugs, abuses opiate, at this time. (Denies drug use on 7/12/14 visit)." Tr. 462. Plaintiff did not have any prescriptions recorded with the hospital during that visit. Tr. 463. Plaintiff reported that he did not feel that his symptoms

at the time were a "normal reaction" to taking two doses of Ambien with

Oxycodone. Tr. 464.[1]

This record is ambiguous as to whether Plaintiff affirmatively

misrepresented his opioid use. Plaintiff argues that his reporting was not

inaccurate because he was prescribed opioids during this time frame, meaning his

opioid use was not opioid abuse. ECF No. 14 at 11-12. However, the record also

reflects that different medications were reported at different times, and opiate

abuse was specifically documented during Plaintiff's visits to the emergency

department. *See* Tr. 315, 464. Even if the ALJ did err in making this finding, such

error is harmless. As discussed *supra*, the ALJ provided several other reasons,

supported by substantial evidence, for discrediting Plaintiff's symptom complaints.

*See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir.

2008); *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's

error was harmless where the ALJ provided one or more invalid reasons for

disbelieving a claimant's testimony, but also provided valid reasons that were

supported by the record."); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190,

1197 (9th Cir. 2004) (holding that any error the ALJ committed in asserting one

_____

[1] Plaintiff accurately notes that the ALJ misattributed this statement in the chart

note to a medical provider rather than to Plaintiff. ECF No. 14 at 12.

impermissible reason for claimant's lack of credibility did not negate the validity of the ALJ's ultimate conclusion that the claimant's testimony was not credible). Overall, the ALJ's evaluation of Plaintiff's symptom testimony is supported by substantial evidence.

**B. Medical Opinion Evidence**

Plaintiff challenges the ALJ's consideration of the medical opinions of Caryn Jackson, M.D., and Aaron Burdge, Ph.D. ECF No. 14 at 14-20.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by

substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

"However, the ALJ need not accept the opinion of any physician, including a

treating physician, if that opinion is brief, conclusory and inadequately supported

by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228

(9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or

examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

may only reject it by providing specific and legitimate reasons that are supported

by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester,* 81 F.3d at 830-

831).

### 1. *Dr. Jackson – Physical Opinions*

Dr. Jackson is Plaintiff's primary care provider and treated Plaintiff from

September 28, 2012 to July 29, 2015. *See* Tr. 377, 659. Plaintiff challenges the

ALJ's treatment of three separate opinions Dr. Jackson rendered regarding

Plaintiff's physical impairments. ECF No. 14 at 14-16.

On January 6, 2014, Dr. Jackson opined Plaintiff's lumbar radiculopathy

would cause severe impairments in Plaintiff's ability to sit, stand, lift, carry, stoop,

and crouch; that Plaintiff's annular tear and disc bulge would cause severe

impairments in basic work-related activities; that Plaintiff's testicular hypofunction

would cause moderate interference with basic work-related activities; that

Plaintiff's anxiety and depression would cause marked impairments in basic work-

related activities; and that Plaintiff was severely limited, meaning he was unable to meet the demands of sedentary work (defined as the ability to lift a maximum of 10 pounds or being able to walk or stand only for brief periods). Tr. 367-71.

On May 15, 2015, Dr. Jackson opined Plaintiff's lumbar disc disease would cause severe impairment in Plaintiff's ability to perform basic work-related activities and that Plaintiff was severely limited, meaning he was unable to meet the demands of sedentary work (defined as the ability to lift a maximum of 10 pounds or being able to walk or stand only for brief periods). Tr. 564-66.

On July 29, 2015, Dr. Jackson opined Plaintiff would miss four days or more of work per month; that Plaintiff was severely limited, meaning he was unable to lift at least two pounds or unable to stand or walk; that Plaintiff was limited to occasional handling and reaching in his upper extremities; and that Plaintiff's physical and mental health together make any work schedule impossible. Tr. 659-61.

The ALJ gave all three opinions little weight. Tr. 32. Because Dr. Jackson's opinions were contradicted by Dr. Thompson, Tr. 589-90, the ALJ was required to provide specific and legitimate reasons for rejecting the opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Jackson's opinions were inconsistent with Plaintiff's examination findings. Tr. 32. An ALJ may discredit a physician's

ORDER - 24

opinions that are unsupported by the record as a whole. *Batson*, 359 F.3d at 1195.

As discussed *supra*, Plaintiff's objective imaging and physical examinations

yielded results that were consistent with the ALJ's RFC formulation. *See* Tr. 333,

357 (May 21, 2013 lumbar spine CT showed L4-L5 disk bulge with mild stenosis

of the canal, otherwise unremarkable); Tr. 360, 407 (November 25, 2013 MRI

showed left paracentral disc bulging with an annular tear at L4-5 mildly narrowing

the central canal, left lateral recess, and neural foramen; mild degenerative changes

at L2-3, L3-4, L5-S1 without significant stenosis or nerve root impingement); Tr.

378 (MRI showed lateral disc herniation at L3-4 on the left side on February 3,

2014); Tr. 482 (July 22, 2014 imaging shows satisfactory position of hardware and

disc materials following surgery); Tr. 583 (March 9, 2015 x-rays look satisfactory);

Tr. 586 (April 29, 2015 MRI showed postoperative changes and L2-3 diffuse disc

bulging resulting in mild narrowing of the central canal and encroachment of the

lateral recesses); Tr. 771 (September 18, 2015 MRI showed progression of mild to

moderate degenerative disc disease L2-3 and stable mild degenerative disc disease

L5-S1); *see also* Tr. 315-16 (April 3, 2013 examination showed back range of

motion limited by pain but normal gait, Achilles and patellar deep tendon reflexes,

no focal motor or focal sensory deficits, and ambulating without assistance); Tr.

333 (June 30, 2013 examination showed intact sensory and motor in the lower

extremities); Tr. 370 (January 6, 2014 range of motion exam showed only slightly

reduced range of motion in back extension, back flexion, left lateral flexion, and left hip abduction); Tr. 387 (January 13, 2014 examination showed normal gait, heel walk, toe walk, tandem walk, and active pain free range of motion in hips, shoulders, ankles, elbows, and knees); Tr. 463-64 (July 12, 2014 examination showed normal range of motion in extremities and back, and Plaintiff was ambulatory without assistance); Tr. 474 (July 21, 2014 examination showed Plaintiff was able to toe walk, heel walk, and squat without difficulty; able to bend side to side and rotate side to side to 45 degrees and extend to 30 degrees while seated; hips, knees, and ankles showed excellent pain-free range of motion; and motor strength 5/5 with hip flexion and extension, adduction, and abduction, knee flexion and extension, dorsiflexion, and plantarflexion of the foot and dorsiflexion of the great toe bilaterally); Tr. 579 (November 5, 2014 examination shows normal musculoskeletal overview and Plaintiff was ambulatory); Tr. 582 (March 9, 2015 examinations showed active and passive pain free range of motion, normal gait, and normal lumbar examination); Tr. 585 (May 7, 2015 normal physical examination); Tr. 567 (May 15, 2015 range of motion exam showed normal hip extension and adduction); Tr. 676 (July 4, 2015 normal range of motion in back following motorcycle accident). The ALJ reasonably concluded that the medical evidence did not support Dr. Jackson's opinion that Plaintiff was severely limited, meaning he was unable to lift 10 pounds and unable to walk or stand for brief

periods. Tr. 32; *see* Tr. 369. Contrary to Plaintiff's assertion, the ALJ did summarize the evidence and explain why the ALJ's RFC formulation was supported by the evidence. Tr. 28-34. Although Plaintiff argues for a different interpretation of the evidence, the Court may not reverse the ALJ's decision based on Plaintiff's disagreement with the ALJ's interpretation of the record. *See Tommasetti*, 533 F.3d at 1038. This inconsistency with the medical evidence was a specific and legitimate reason to discredit Dr. Jackson's opinion.

Second, the ALJ found Dr. Jackson's opinions were inconsistent with Plaintiff's longitudinal treatment history. Tr. 32. An ALJ may discredit physicians' opinions that are unsupported by the record as a whole. *Batson*, 359 F.3d at 1195. As discussed *supra*, Plaintiff's physical symptoms showed a positive response to surgical and pharmaceutical treatment. *See* Tr. 332 (Plaintiff reported on June 30, 2013 that medication provided moderate pain relief and his current pain was 3/10); Tr. 380, 502 (Plaintiff reported on February 3, 2014 that his pain was a 3/10 after receiving pain relief injections); Tr. 392 (Plaintiff reported on May 22, 2014 that he experienced a 60-70% improvement for a few days after pain relief injection); Tr. 575 (Plaintiff reported on August 1, 2014 that he is doing well after back surgery and experiences daily improvement in his pain); Tr. 579 (Plaintiff reported on November 5, 2014 that he continued to experience pain; Dr. Chang recommended a back brace and physical therapy); Tr. 584-85 (Plaintiff

ORDER - 27

reported on May 7, 2015 that overall he is better than before surgery but that he still feels he significantly limited by pain; Dr. Chang recommended continued nonoperative treatment). The ALJ reasonably concluded that this record of a positive response to treatment was inconsistent with Dr. Jackson's opinion that Plaintiff was incapable of meeting the demands of sedentary work. Tr. 32. Although Plaintiff argues for a different interpretation of the evidence, the Court may not reverse the ALJ's decision based on Plaintiff's disagreement with the ALJ's interpretation of the record. *See Tommasetti*, 533 F.3d at 1038. This was a specific and legitimate reason to discredit Dr. Jackson's opinions.

Third, the ALJ found Dr. Jackson's opinions were inconsistent with Plaintiff's daily activities. Tr. 32. An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). As discussed *supra*, Plaintiff testified that he was able to ride his motorcycle for 20 to 30 minutes at a time and reported performing work activities including cutting down trees, lifting logs, and driving a truck after experiencing his disabling injury. Tr. 66, 234, 314-15. The ALJ reasonably concluded that these activities were inconsistent with Dr. Jackson's opinion that Plaintiff would not be able to lift a maximum of ten pounds and would be able to walk or stand for only brief periods. Tr. 32. This was a specific and legitimate reason to discredit Dr. Jackson's opinions.

Fourth, the ALJ found Dr. Jackson's May 2015 and July 2015 opinions were not explained. Tr. 32. The Social Security regulations "give more weight to opinions that are explained than to those that are not." *Holohan*, 246 F.3d at 1202. The ALJ found that Dr. Jackson did not explain why Plaintiff's diagnoses supported the severe restrictions she opined. Tr. 32. Dr. Jackson's May 2015 opinion indicated Plaintiff experienced ongoing low back pain since surgery, mental health issues, and included a range of motion examination that indicated some impairment in left hip flexion and abduction. Tr. 564-68. Dr. Jackson's July 2015 opinion listed Plaintiff's diagnoses, treatment, and medication side effects. Tr. 659-61. However, neither opinion explained why Plaintiff's diagnoses and symptoms supported the level of limitation Dr. Jackson opined. The "mere diagnosis of an impairment … is not sufficient to sustain a finding of disability." *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985). Without further explanation of how Plaintiff's impairments supported Dr. Jackson's opined limitations, the ALJ reasonably concluded that Dr. Jackson's opinions were not sufficiently explained. This was a specific and legitimate reason to discredit her opinions.

2. *Dr. Jackson – Mental Opinions*

Plaintiff also challenges Dr. Jackson's July 2015 opinions regarding Plaintiff's mental limitations. On July 29, 2015, Dr. Jackson opined Plaintiff was mildly limited in his ability to carry out very short simple instructions; that

ORDER - 29

Plaintiff was moderately limited in his ability to carry out detailed instructions, be aware of normal hazards and take appropriate precautions, and travel in unfamiliar places or use public transportation; that Plaintiff was markedly limited in his ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, sustain an ordinary routine without supervision, make simple work related decisions, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, ask simple questions or request assistance, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others; that Plaintiff was severely limited in his ability to work in coordination with or proximity to others without being distracted by them, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; that Plaintiff would be off-task over 30% of a 40-hour week schedule; that Plaintiff would miss 4 or more days of work per month; and that Plaintiff's physical and mental health together make any work schedule impossible.  Tr. 659-64.  The ALJ assigned this opinion no weight.  Tr. 34.

ORDER - 30

Because Dr. Jackson's opinion was contradicted by Dr. van Dam, Tr. 94-95, and Dr. Fitterer, Tr. 122-23, the ALJ was required to provide specific and legitimate reasons for rejecting the opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Jackson's opinion was internally inconsistent. Tr. 34. Incongruity between a doctor's medical opinion and treatment records or notes is a specific and legitimate reason to discount a doctor's opinion. *Tommasetti*, 533 F.3d at 1041. Although Dr. Jackson opined a range of mild, moderate, marked, and severe limitations in Plaintiff's mental functioning, the ALJ noted Dr. Jackson consistently noted Plaintiff's mental symptoms were controlled with medication. Tr. 34; *see* Tr. 570 ("significant mental health/behavioral issues under reasonable control on current meds"); Tr. 600 (Bipolar Disorder and Antisocial Personality Disorder "pretty much stable on current meds … medications have been critical in stabilizing him and he has not had significant manic or depressive symptoms"); Tr. 620 (continue current medications; noted improvement of initial mental health symptoms). The ALJ reasonably concluded that Dr. Jackson's observations of Plaintiff's symptoms over his course of treatment with her were inconsistent with the level of impairment Dr. Jackson opined. This was a specific and legitimate reason to discredit Dr. Jackson's opinion.

Second, the ALJ found Dr. Jackson's opinion was inconsistent with the medical evidence as a whole. Tr. 34. An ALJ may discredit physicians' opinions

ORDER - 31

that are unsupported by the record as a whole. *Batson*, 359 F.3d at 1195.

Although Dr. Jackson opined a range of mild, moderate, marked, and severe

limitations in Plaintiff's mental functioning, the ALJ noted these limitations were

inconsistent with Plaintiff's history of performance on mental status examinations.

Tr. 34; *see* Tr. 427-28, 432-33, 436-37 (although showing constricted affect,

anxious and depressed mood, the provider observed fair reasoning, fair judgment,

fair insight, fair impulse control, appropriate appearance and speech, full

orientation, unremarkable behavior, intact memory, maintained attention, average

intellect, clear consciousness, cooperative and hopeful attitude, realistic perception

of self, logical thought process, unremarkable thought content, and no suicidal

ideation); *see also* Tr. 390, 392, 394, 463, 473, 495, 576, 579, 585 (all showing

Plaintiff was oriented to person, place, time, and situation, and he displayed

appropriate mood, normal affect, normal speech, normal memory, normal insight,

and normal judgment). The ALJ reasonably concluded that these mild findings on

Plaintiff's mental status examinations throughout the record were inconsistent with

the level of impairment Dr. Jackson opined. This was a specific and legitimate

reason to discredit Dr. Jackson's opinion.

Third, the ALJ found Dr. Jackson's opinion was entitled to less weight

because she was not a qualified mental health specialist. Tr. 34. A medical

provider's specialization is a relevant consideration in weighing medical opinion

ORDER - 32

evidence. 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5). Dr. Jackson's specialty is internal medicine. Tr. 661. It was reasonable for the ALJ to consider Dr. Jackson's specialty in evaluating her opinions. Tr. 34.

Fourth, the ALJ found Dr. Jackson's opinion that Plaintiff was unable to work was entitled to no weight because it was an opinion on an issue reserved to the Commissioner. Tr. 34. The regulations provide that a statement by a medical source that a Plaintiff is "unable to work" is not a medical opinion and is not due any special significance because the legal conclusion of disability is reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(3) ("We will not give any special significance to the source of an opinion on issues reserved to the Commissioner . . . "); 20 C.F.R. § 416.927(d). The legal conclusion of disability is reserved exclusively to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); *see also McLeod v. Astrue*, 640 F.3d 881, 884 (9th Cir. 2011) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate issue of disability."). Nevertheless, the ALJ is required to "carefully consider medical source opinions about any issue, including opinion about issues that are reserved to the Commissioner." Social Security Ruling (SSR) 96-5p, 1996 WL 374183, at *2 (July 2, 1996); *Holohan,* 246 F.3d at 1203-04 ("If the treating physician's opinion on the issue of disability is controverted, the ALJ

ORDER - 33

must still provide 'specific and legitimate' reasons in order to reject the treating physician's opinion.").  In addition to specific physical and mental functional limitations, Dr. Jackson opined Plaintiff's "physical + mental health together makes any work schedule impossible."  Tr. 661.  This is an opinion as to Plaintiff's ability to work, which is an opinion on the ultimate issue of disability.  *See* 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  Therefore, the ALJ was not required to assign this opinion any particular weight.  As discussed *supra*, the ALJ considered the full scope of Dr. Jackson's opinion and discredited it for several specific and legitimate reasons.  The ALJ did not err in discrediting Dr. Jackson's opinion on the ultimate issue of disability.

    *3.  Dr. Burdge*

    Dr. Burdge examined Plaintiff on June 18, 2013, and opined Plaintiff's depression would affect Plaintiff's ability to work; that Plaintiff had severe impairment in his ability to complete a normal work day and work week without interruptions from psychologically based symptoms; that Plaintiff had marked impairments in his ability to perform activities within a schedule, maintain regular attendance; and be punctual within customary tolerances without special supervision; that Plaintiff had marked impairments in his ability to maintain appropriate behavior in a work setting; and that Plaintiff had moderate impairment in his ability to maintain appropriate behavior in a work setting.  Tr. 325-31.  The

ALJ gave this opinion little weight.  Tr. 33.  Because Dr. Burdge's opinion was contradicted by Dr. van Dam, Tr. 94-95, and Dr. Fitterrer, Tr. 122-23, the ALJ was required to provide specific and legitimate reasons for rejecting the opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Burdge's opinion was internally inconsistent.  Tr. 33.  A medical opinion may be rejected if it is unsupported by medical findings. *Bray*, 554 F.3d at 1228; *Batson*, 359 F.3d at 1195; *Thomas*, 278 F.3d at 957; *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).  Furthermore, a physician's opinion may be rejected if it is unsupported by the physician's treatment notes.  *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003).  Here, the ALJ found Dr. Burdge's opined limitations were inconsistent with Dr. Burdge's mental status examination findings.  Tr. 33.  Dr. Burdge's mental status testing showed Trial Making Tests A & B results within the normal range, HAM-D results showing moderate depression, HAM-A results showing normal findings, and PAI results showing some indications of negative impression management.  Tr. 326.  Dr. Burdge's mental status examination of Plaintiff showed appropriate hygiene, normal tone, normal rate of speech, demonstrated adequate comprehension, cooperative and friendly attitude and behavior, frequent eye contact, alert and attentive behavior, adequate effort, functioning in the average to above average range of intelligence,

ORDER - 35

dysphoric mood, variable affect, and thought process and content, orientation, perception, memory, fund of knowledge, concentration, abstract thinking, and insight and judgment all within normal limits. Tr. 329-30. The ALJ reasonably concluded that these mild test results were inconsistent with the marked and severe limitations Dr. Burdge opined. This was a specific and legitimate reason to discredit Dr. Burdge's opinion.

Second, the ALJ found Dr. Burdge's opinion was not explained. Tr. 33. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. Dr. Burdge's report contains several test results, but does not explain how those test results support the level of impairment Dr. Burdge opined. Tr. 325-30. Plaintiff argues that the test results support Dr. Burdge's opined limitations and therefore explain the opinion. ECF No. 14 at 20. However, as discussed *supra*, the ALJ reasonably concluded that Dr. Burdge's opined limitations were inconsistent with the results of the testing he conducted. Furthermore, the Court may not reverse the ALJ's decision based on Plaintiff's disagreement with the ALJ's interpretation of the record. *See Tommasetti*, 533 F.3d at 1038. The ALJ reasonably concluded that Dr. Burdge did not sufficiently explain the differences between his examination results and the

limitations he opined.  This was a specific and legitimate reason to discredit Dr. Burdge's opinion.

**C. Substantial Evidence**

Plaintiff contends the ALJ's step four and step five findings were based on an improper RFC formulation and encourages the Court to remand this case for an award of benefits.  ECF No. 14 at 20.  However, Plaintiff's argument is based entirely on the assumption that the ALJ erred in considering the medical opinion evidence and Plaintiff's symptom claims.  *Id.*  For reasons discussed throughout this decision, the ALJ's consideration of Plaintiff's symptom claims and consideration of the medical opinion evidence are legally sufficient and supported by substantial evidence.  Thus, the ALJ did not err in assessing the RFC or finding Plaintiff capable of performing work existing in the national economy.

## CONCLUSION

After review, the Court finds that the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**IT IS ORDERED:**

1.  Plaintiff's motion for summary judgment (ECF No. 14) is **DENIED.**

2.  Defendant's motion for summary judgment (ECF No. 15) is **GRANTED.**

The District Court Executive is directed to file this Order, enter **JUDGMENT FOR THE DEFENDANT**, provide copies to counsel, and **CLOSE THE FILE**.

DATED August 14, 2018.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 38